[No. B211070. Second Dist., Div. Two. May 6, 2009.]

MANHATTAN LOFT, LLC, Plaintiff and Appellant, v.
MERCURY LIQUORS, INC., et al., Defendants and Respondents.

**COUNSEL**

Leonard, Dicker & Schreiber, Richard C. Leonard and Steven A. Schuman for Plaintiff and Appellant.

Bingham McCutchen, Bruce A. Friedman, Roland Tellis and Heather L. Ristau for Defendants and Respondents.

## OPINION

**ASHMANN-GERST, J.**—This appeal arises out of a storied real estate transaction. Plaintiff and appellant Manhattan Loft, LLC (appellant), purchased certain real property from Sixth & Spring, LLC, subject to an existing lease for a portion of the basement and first floor to Mercury Liquors, Inc. (Mercury). A dispute arose, prompting those with an interest in the lease[1] to commence two arbitration proceedings against appellant. In connection with the arbitration proceedings, the client respondents, through their counsel, respondents Alschuler Grossman Stein & Kahan and Bingham McCutchen (collectively the attorney respondents), recorded two notices of pending actions against the subject property.

Following the client respondents' favorable arbitration award, appellant filed suit against respondents for slander of title, claiming that they erred in filing the notices of pending action. Respondents filed a special motion to strike appellant's complaint pursuant to Code of Civil Procedure section 425.16,[2] California's anti-SLAPP statute.[3] The trial court granted respondents' motion, and appellant appeals, presenting us with the following legal question: Can a party to a pending arbitration record a notice of pendency of action without first filing a civil action in superior court?

We conclude that the answer is no. Looking to the plain language of title 4.5 of the Code of Civil Procedure, a lis pendens may only be filed when an action in a court of law is pending. Because no such action was pending at the time respondents filed the two lis pendens, they improperly recorded the notices of pendency of action. Respondents' concomitant arguments are unconvincing. Accordingly, we reverse the order of the trial court; respondents' anti-SLAPP motion should have been denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Building

Appellant is the owner of a 14-story building located at 215 West Sixth Street in downtown Los Angeles (the building). Appellant purchased the

---

[1] Along with Mercury, these parties include Sixth & Spring, LLC, Arnold Greenspan, individually and in his capacity as trustee of the Andrew Meieran Family Trust, and Andrew Meieran. All of these parties collectively are referred to as the client respondents.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3] SLAPP is an acronym for strategic lawsuit against public participation. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 813 [33 Cal.Rptr.2d 446], disapproved in part on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

building from Sixth & Spring, LLC, pursuant to a purchase agreement and subject to an existing lease for a portion of the basement and first floor (the bar space) to Mercury. The purchase agreement and lease granted certain rights to Arnold Greenspan, as trustee of the Andrew Meieran Family Trust (Greenspan), including easements over existing means of egress and certain access to the bar space.

As part of the purchase agreement, appellant agreed to transfer title to the bar space to Greenspan when appellant completed its condominium conversion of the building.

The purchase agreement also contains an arbitration clause.

### The First Arbitration and the First Lis Pendens

According to Greenspan, after sale of the building closed, appellant engaged in conduct that denied him the easements and rights of possession under the purchase agreement and lease. Thus, on August 14, 2006, he served a demand for arbitration on appellant and its manager, Barry Shy (Shy), alleging "[b]reaches of a non-residential real estate agreement including failure to perform required improvements, failure to provide use of space as set forth in the agreement, destruction of property, and failure to pay reimbursements for loss of space involving real property located at 215 W. 6th Street, Los Angeles, CA 90014." Greenspan sought (1) to enforce various easements, (2) to add a claim by Sixth & Spring, LLC, to rescind the purchase agreement, and (3) monetary damages.

While the arbitration was pending, on or about January 10, 2007, respondents recorded a lis pendens against the building. The lis pendens provides "that [an] arbitration proceeding was commenced on December 8, 2006, in [Judicial Arbitration and Mediation Services (JAMS)]" and that "[t]his arbitration proceeding is now pending before [JAMS]." The lis pendens also indicates that the "arbitration proceeding alleges a real property claim affecting" the building.

On November 5, 2007, the arbitrator issued a final award in favor of Greenspan, finding that he had "met his burden of persuasion in this breach of contract dispute." Greenspan was awarded money damages in the amount "of $1,394,600 for property damage or loss, plus lost profits in the amount of $1,428,137, plus lost business value in the amount of $10,727,785." Greenspan also was awarded attorney fees in the amount of $977,287.88 and a permanent injunction restricting appellant's entry into the bar space.

Thereafter, on January 15, 2008, the trial court (Hon. Richard L. Fruin) corrected and confirmed the arbitration award, and then entered judgment.

Specifically, the trial court "excise[d]" the damage award for lost profits and lost business value; monetary damages were reduced to $1,394,600 for property damage, $977,287.88 for attorney fees and costs, and a permanent injunction as set forth in the final arbitration award.

This judgment is the subject of a pending appeal and cross-appeal. (*Greenspan v. Manhattan Loft, LLC*, B205917.)

### The Second Arbitration and the Second Lis Pendens

On January 25, 2008, Greenspan and others initiated a second arbitration against appellant and Shy. The demand explains that Greenspan "pursued a claim for lost profits and lost business value as a result of [appellant and Shy's] breach of the Purchase Contract and related agreements . . . . The matter was submitted to arbitration before JAMS . . . . At the conclusion of the arbitration, the Arbitrator issued an award in [Greenspan's] favor for property damage or loss, plus lost profits and lost business value."

"In response to the . . . petition to confirm the [arbitration] award, [appellant and Shy] contended that [Greenspan] had no standing to pursue a claim for lost profits and lost business value . . . . The Los Angeles Superior Court, Judge Fruin presiding, accepted this argument and ruled in [appellant and Shy's] favor by correcting the award to eliminate the sums awarded by the Arbitrator for lost profits and lost business value and entering judgment for property damage only. [Greenspan] disputes that result and will appeal that judgment. However, if the judgment is affirmed on the basis that [an entity other than Greenspan] holds the right to claim lost profits and lost business value, then [Greenspan's] entitlement to pursue a claim for lost profits against [appellant and Shy] will have been conclusively determined as against [appellant and Shy]. This Demand seeks to preserve, against any defense of the statute of limitations or laches, whatever right [Greenspan] may ultimately be determined to have to assert those claims against [appellant and Shy]." The second arbitration demand also seeks rescission of the purchase agreement.

On January 31, 2008, respondents recorded a second lis pendens against the building. This lis pendens indicates that an "arbitration proceeding was commenced on January 28, 2008, in the [American Arbitration Association]" and that "[t]his arbitration proceeding is now pending before [that] tribunal." It also provides that this "arbitration proceeding alleges a real property claim affecting the [building]."

### Appellant's Complaint

On February 25, 2008, appellant filed its complaint in this action against respondents. According to the complaint, respondents wrongfully recorded

the two lis pendens because "[e]ach of the Claims refers to an arbitration proceeding rather than to a civil action. An arbitration proceeding is not an 'action' within the meaning of Code of Civil Procedure sections 22, 47, 405.1, 405.2 and 405.4. Neither the Code of Civil Procedure, nor any other statute authorizes the filing of a 'lis pendens' without reference to a pending action. Moreover, the filing of the Claims is expressly outside the scope of the litigation privilege as set forth in Civil Code Section 47(b)(4). Additionally, neither the First Claim nor the Second Claim involves a claim against the Property within the meaning of Code of Civil Procedure Section 405.4."

Appellant asserts that it asked respondents to remove the lis pendens, but they refused to do so.

Appellant avers that it has suffered "very substantial damages as a result of the Claims. The Property is a fourteen-story building that has been converted into loft-style condominiums. The condominiums are nearly ready for sale to the public. But for the fact that [respondents] recorded the Claims, [appellant] would have begun offering the condominium units for sale during 2007, with the intention of closing the sales as soon as the Property obtained the appropriate Certificate of Occupancy. Because of the Claims, however, it was and is impossible to enter into any such contracts. The delay caused by the Claims has caused [appellant] very substantial damages." Moreover, "[s]ince the First Claim was filed, the market for residential real estate has substantially declined, as has the value of such real estate. [Appellant] is informed and believes, and on the basis of such information and belief alleges, that its damages already exceed $10,000,000. Those damages will continue to grow each day the Claims remain against the Property."

### Respondents' Successful Anti-SLAPP Motion and Appellant's Appeal

In response, the attorney respondents filed a special motion to strike as a SLAPP suit the first cause of action for slander of title. First, they argued that appellant's slander of title claim arose from the protected activity of recording notices of lis pendens. Second, they asserted that appellant could not establish a probability of prevailing because (1) the recordation of the lis pendens was absolutely privileged, and (2) no damages could have resulted from the recordation of the notices of lis pendens.

On or about April 2, 2008, the client respondents filed a notice of joinder in the attorney respondents' anti-SLAPP motion.

Appellant opposed the anti-SLAPP motion. It set forth the following arguments: (1) the recording of the two lis pendens did not constitute protected activity; (2) the recording of the lis pendens was not absolutely

privileged because respondents did not file an action in court, and a lis pendens may not be filed in connection with a pending arbitration; (3) the lis pendens were improper because they did not assert real property claims; and (4) appellant did suffer substantial damages.

After entertaining oral argument, the trial court granted respondents' anti-SLAPP motion.

Appellant's timely appeal ensued.

## DISCUSSION

### I. *Standard of Review*

"We review the trial court's rulings on a SLAPP motion independently under a de novo standard of review. [Citation.]" (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929 [116 Cal.Rptr.2d 187].)

### II. *The Anti-SLAPP Statute*

 Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The statute "posits . . . a two-step process for determining whether an action is a SLAPP." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703].) First, the defendant bringing the special motion to strike must make a prima facie showing that the anti-SLAPP statute applies to the claims that are the subject of the motion. (*Wilcox v. Superior Court, supra,* 27 Cal.App.4th at p. 819.) Once a moving defendant has met its burden, the motion will be granted (and the claims stricken) unless the court determines that the plaintiff has established a probability of prevailing on the claim. (*DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 567–568 [92 Cal.Rptr.2d 755].)

### III. *The Trial Court Improperly Granted Respondents' Anti-SLAPP Motion*

#### A. *Slander of title arises from protected activity*

We first consider whether appellant's slander of title cause of action arises from protected activity.

■ As is relevant here, section 425.16, subdivision (e) defines an " 'act in furtherance of a person's right of petition' " to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e).) The filing of a notice of lis pendens falls squarely within this definition. (See, e.g., *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1285 [74 Cal.Rptr.3d 873]; *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 736, fn. 6 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

Appellant urges us to conclude that the filings of the two lis pendens here did not arise out of protected activity because they did not bear "some relationship to the pending arbitration." We disagree. The arbitration proceedings involved claims that affected title to and rights of possession of the building. The first demand for arbitration describes the nature of the dispute as "[b]reaches of a non-residential real estate agreement including failure to perform required improvements, failure to provide use of space as set forth in the agreement, destruction of property, and failure to pay reimbursements for loss of space involving real property." And, as Greenspan explains in his arbitration brief, appellant allegedly caused "great property damage and loss" to the leased space in the building, including appellant's alleged denial of certain easement rights. Likewise, the second demand for arbitration involves real property claims, which appellant concedes by only challenging the first demand for arbitration. Because respondents sought to enforce and protect their rights in the building via the lis pendens, certainly the lis pendens bore a relationship to the arbitration proceedings.

*Paul v. Friedman* (2002) 95 Cal.App.4th 853 [117 Cal.Rptr.2d 82] is readily distinguishable. In that case, the "lawsuit alleged [that the defendant] conducted a harassing investigation that extended far beyond the scope of the issues subject to arbitration." (*Id.* at p. 866.) "Fairly read, the complaint [alleged that the plaintiff] was injured by acts of [the defendant] that had no connection to the issues under review in the arbitration." (*Ibid.*) In contrast, as set forth above, the lis pendens notices here had a direct connection to the arbitration proceedings.

### B. *Probability of prevailing*

■ Because appellant's slander of title cause of action is subject to the anti-SLAPP statute, the burden shifted to it to show, through competent, admissible evidence, a probability of success on the merits of its claim in order to defeat respondents' anti-SLAPP motion. (*Evans v. Unkow* (1995) 38

Cal.App.4th 1490, 1496–1498 [45 Cal.Rptr.2d 624].) Accordingly, appellant was required to establish each of the following four elements: (1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss. (*Howard v. Schaniel* (1980) 113 Cal.App.3d 256, 263–264 [169 Cal.Rptr. 678].)

1. *Respondents were not permitted to record the lis pendens*

a. *An "action" does not include arbitration*

We first consider whether respondents were authorized to file the lis pendens. According to appellant, because no "action" was filed in a "court," respondents were not permitted to file the lis pendens. (See §§ 22, 405.1, 405.2, 405.5, 405.20; *The Formula Inc. v. Superior Court* (2008) 168 Cal.App.4th 1455, 1459–1465 [86 Cal.Rptr.3d 341].) Respondents, on the other hand, argue that an arbitration proceeding is the "functional[] equivalent" to court proceedings; thus, the filing of the lis pendens was proper. (See, e.g., *Moore v. Conliffe* (1994) 7 Cal.4th 634, 645 [29 Cal.Rptr.2d 152, 871 P.2d 204].)

■ "The question is one of statutory construction. The starting point is 'with the language of the statute, affording the words their ordinary and usual meaning and viewing them in their statutory context.' [Citation.] We read related provisions together as part of an overall statutory scheme, so as to harmonize them and give them all effect if possible. [Citations.] The central language is in section 405.20: 'an action [that] asserts a real property claim.' Should this phrase be construed to include [arbitrations]?" (*The Formula Inc. v. Superior Court, supra*, 168 Cal.App.4th at p. 1461.)

■ Section 22 defines "an action" as follows: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (§ 22.) Title 4.5 of the Code of Civil Procedure, which governs recording notice of certain actions, repeatedly uses the word "action." (See, e.g., § 405.5 ["This title applies to an action pending in any United States District Court in the same manner that it applies to an action pending in the courts of this state."]; § 405.20 ["A party to an action who asserts a real property claim may record a notice of pendency of action in which that real property claim is alleged."].) There is no reference to arbitration proceedings. This plain language compels the conclusion that a lis pendens may only be recorded when an action is pending in state or federal court. (See, e.g., *Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 651 [15 Cal.Rptr.3d 805, 93 P.3d 395] ["we cannot ignore the

plain language of the statute . . ."]; 5 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 11:136, p. 343 ["A lis pendens may be recorded in an appropriate action in the state court, or it can be recorded under state law when the action is pending in a federal court."]; Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2008) ¶ 11:624, p. 11-116.)

Our decision is consistent with verbiage from other statutes within title 4.5 of the Code of Civil Procedure. For example, section 405.22 provides, in relevant part: "Immediately following recordation [of the lis pendens in the office of the recorder of each county in which all or part of the real property is situated], a copy of the notice shall also be filed with the *court* in which the action is pending." (§ 405.22, italics added; see also § 405.20 [place of recording].) Likewise, sections 405.4 and 405.31 refer to a real property claim set forth in a pleading. (§ 405.4 [" 'Real property claim' means the cause or causes of action in a *pleading* . . . ." (italics added)]; § 405.31 ["the court shall order the notice expunged if the court finds that the *pleading* on which the notice is based does not contain a real property claim" (italics added)].) These words indicate that the Legislature intended a lis pendens only to be filed in court in connection with judicial proceedings. (See, e.g., *Sheppard v. Lightpost Museum Fund* (2006) 146 Cal.App.4th 315, 323 [52 Cal.Rptr.3d 821]; *Century 21 Chamberlain & Associates v. Haberman* (2009) 173 Cal.App.4th 1, 8.)

### b. *Policies*

In reaching this conclusion, we are mindful of the various competing policies behind the lis pendens statutory scheme. *The Formula Inc. v. Superior Court, supra,* 168 Cal.App.4th 1455 is instructive. In that case, the petitioner filed a civil action in Florida alleging a right to compel construction and sale to it of condominium units located in Mono County, California. (*Id.* at p. 1457.) The petitioner then recorded a notice of the Florida action in Mono County, purportedly pursuant to section 405.20. (*The Formula Inc. v. Superior Court, supra,* at p. 1457.) The respondents successfully applied to the Mono County Superior Court for an order expunging the recorded notice, purportedly under section 405.30. (*The Formula Inc. v. Superior Court, supra,* at p. 1458.) The petitioner then filed a petition for writ of mandate, asking the Court of Appeal to overturn the expungement order. (*Ibid.*)

■ The Court of Appeal denied the petitioner's petition for writ of mandate. (*The Formula Inc. v. Superior Court, supra,* 168 Cal.App.4th at p. 1458.) Relying in part upon section 22's definition of the word "action" (*The Formula Inc. v. Superior Court, supra,* at p. 1461) and legislative history (*id.* at pp. 1461–1462), it concluded that litigation in courts of another state is not a matter within the ambit of California's lis pendens statutes (*id.* at

p. 1459). The court further determined that our lis pendens statutory scheme should not be judicially construed to extend to litigation filed in the courts of other states. (*Id.* at p. 1462.) In so concluding, the court was particularly concerned with a property owner's ability to seek expungement of a notice of pending action. (*Id.* at p. 1464.)

We adopt the same statutory construction and embrace the same policy considerations as our sister court in *The Formula Inc. v. Superior Court, supra*, 168 Cal.App.4th 1455. Certainly, "[o]ne of the objects or purposes of the lis pendens statutes is to advance the interests of litigant claimants. This is manifest because the statutes continue the policy of protection the common law afforded such litigants, provided they record notice pursuant to its terms." (*Id.* at p. 1462.) However, as our Supreme Court has recognized, that was not the original object of the lis pendens statutes. (*Kirkeby v. Superior Court, supra*, 33 Cal.4th at p. 651 [lis pendens statutes were designed to give notice to third parties and not to aid plaintiffs in pursuing claims].) For this reason, " '[t]he history of the lis pendens legislation indicates a legislative intent to restrict rather than broaden the application of the remedy.' [Citation.] Our courts have followed suit by restricting rather than broadening the application of a lis pendens." (*Kirkeby v. Superior Court, supra*, at p. 651.) As we must apply a narrow interpretation of the lis pendens statutes, we cannot expand the definition of the word "action" to include arbitration proceedings.

Moreover, we cannot ignore the fact that one purpose of the lis pendens statutory scheme is to protect property owners. (See, e.g., *The Formula Inc. v. Superior Court, supra*, 168 Cal.App.4th at p. 1464.) Specifically, section 405.30 allows a property owner to "apply to the court in which the action is pending to expunge the notice." (§ 405.30.) In an arbitration proceeding, however, there is no "court in which the action is pending." In fact, in the two arbitral forums here, there is no procedure that allows for an arbitrator to expunge a lis pendens, thereby denying appellant any relief or protection.

Respondents attempt to avoid this result through certain representations in their appellate brief. For example, they assert that "a party wishing to expunge a lis pendens filed in connection with an arbitration proceeding could, *as Appellant did here*, file an action in the superior court seeking expungement of the lis pendens." Not entirely true. Appellant here filed an action for slander of title and then, in that action, sought to expunge the lis pendens. It did not file some sort of separate action to expunge the lis pendens. And, we wonder whether such an action would be available to a property owner. After all, chapter 3 of title 4.5 of the Code of Civil Procedure specifies what relief (including expungement) is available and how to attain it. (See, e.g., §§ 405.30 [expungement], 405.34 [posting of an undertaking].)

 Similarly, citing section 1281.8, subdivision (b), respondents assert that "a party could challenge a lis pendens by commencing a special proceeding in the superior court . . . for a provisional remedy in connection with the arbitration." However, that argument overlooks the definition of " 'provisional remedy,' " as set forth in subdivision (a) of that statute. A " 'provisional remedy' " only includes "[a]ttachments and temporary protective orders," "[w]rits of possession," "[p]reliminary injunctions and temporary restraining orders," and "[r]eceivers." (§ 1281.8, subd. (a)(1)–(4).) While a lis pendens may be a "provisional remedy" (see, e.g., *BGJ Associates v. Superior Court* (1999) 75 Cal.App.4th 952, 967 [89 Cal.Rptr.2d 693]), it is not mentioned in this statute. And, even if we were to ignore the specific limiting language of the statute, respondents' argument would still fail. The provisional remedies envisioned by section 1281.8 are of the kind "designed to enable the plaintiff in a civil action to protect against dissipation of property by the defendant during the pendency of the action, with consequent loss of the benefits of a judgment." (6 Witkin, Cal. Procedure (5th ed. 2008) Provisional Remedies, § 1, p. 25.) Under the principle of *ejusdem generis* (literally, "of the same kind") (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1045 [72 Cal.Rptr.3d 210]), the statute does not anticipate or allow for the expungement of a lis pendens.

Significantly, by prohibiting the filing of a lis pendens based upon an arbitration proceeding, we are not denying the availability of a lis pendens to a party to arbitration. Section 1298.5 provides, in relevant part: "Any party to an action who proceeds to record a notice of pending action . . . shall not thereby waive any right of arbitration which that person may have pursuant to a written agreement to arbitrate, nor any right to petition the court to compel arbitration pursuant to Section 1281.2, if, in filing an action to record that notice, the party at the same time presents to the court an application that the action be stayed pending the arbitration of any dispute which is claimed to be arbitrable and which is relevant to the action." (§ 1298.5.) In other words, the statute contemplates the following: A party to an arbitration agreement (such as the client respondents here) may file an action in court to support the recording of a lis pendens. Simultaneously, the party may file an application to stay the litigation pending arbitration. By utilizing such a procedure, all parties' interests, vis-à-vis the lis pendens statutes[4] and the right to arbitration, are protected.

---

[4] Notably, if the word "action" were interpreted to include "arbitration," as respondents argue, this statute would be rendered meaningless.

### c. *Civil Code section 880.260 does not compel a different result*

■ In urging us to affirm, respondents rely upon Civil Code section 880.260, a statute found within the Marketable Record Title Act (MRTA) of the Civil Code. We are not persuaded. The MRTA was enacted "to make real property more freely alienable and marketable." (*Slintak v. Buckeye Retirement Co., L.L.C., Ltd.* (2006) 139 Cal.App.4th 575, 584 [43 Cal.Rptr.3d 131]; see also Civ. Code, § 880.020.) To that end, the Legislature adopted the MRTA, setting forth times for expiration of interests in real property. (*Severns v. Union Pacific Railroad Co.* (2002) 101 Cal.App.4th 1209, 1220–1221 [125 Cal.Rptr.2d 100]; Civ. Code, §§ 880.020, subd. (a)(4), 882.020.)

Consistent with that purpose, Civil Code section 880.260 explains: "An interest in real property . . . does not expire or expire of record and is not unenforceable pursuant to this title at the time prescribed in this title if within the time an action is commenced to enforce, establish, clear title to, or otherwise affect the interest and a notice of the pendency of the action is recorded as provided by law. For the purpose of this section, action includes special proceeding and arbitration proceeding." In other words, the two limitation periods set forth in Civil Code section 882.020, subdivision (a) do not apply (and there is no expiration of an interest in real property by operation of law) if an action to enforce, establish or clear title is commenced and a lis pendens is recorded with the time limitation set forth in Civil Code section 880.260. (*Slintak v. Buckeye Retirement Co., L.L.C., Ltd., supra,* 139 Cal.App.4th at p. 586; Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions, *supra,* ¶ 3:298.1, p. 3-63.) Thus, what Civil Code section 880.260 accomplishes is the following: "if an action is commenced and a lis pendens filed, the running of the limitations period under the MRTA is reset and a 10-year limitations period commences on the date of the recording of the lis pendens." (*Slintak v. Buckeye Retirement Co., L.L.C., Ltd., supra,* at p. 587.)

Civil Code section 880.260 does indicate that "action" includes "arbitration proceeding," ostensibly suggesting that if a party with an interest in real property initiates an arbitration proceeding, then it may also properly file a notice of pendency of that arbitration proceeding. (Civ. Code, § 880.260.) However, we cannot agree with respondents that this statute overrides the numerous Code of Civil Procedure sections identified above that do not allow an arbitration proceeding to support the recording of a lis pendens. Rather, at best, Civil Code section 880.260 conflicts with the numerous Code of Civil Procedure sections set forth above.

■ If two seemingly inconsistent statutes conflict, the court's role is to harmonize the law. (*People v. Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr.

918, 802 P.2d 420] ["[w]e do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]"]; *Chatsky & Associates v. Superior Court* (2004) 117 Cal.App.4th 873, 876 [12 Cal.Rptr.3d 154] ["Where, as here, we are called upon to interpret two seemingly inconsistent statutes to determine which applies under a particular set of facts, our goal is to harmonize the law [citation] and avoid an interpretation that requires one statute to be ignored. [Citation.]"].) We presume that the Legislature, when enacting a statute, was aware of existing related laws and intended to maintain a consistent body of rules. (*People v. Vessell* (1995) 36 Cal.App.4th 285, 289 [42 Cal.Rptr.2d 241].) If inconsistent statutes cannot otherwise be reconciled, "a particular or specific provision will take precedence over a conflicting general provision." (*Ibid.*; see also § 1859.)

Moreover, " '[i]t is elementary that, if possible, statutes will be so construed as to avoid absurd applications and to uphold their validity. [Citation.] A statute "will not be given an interpretation in conflict with its clear purpose . . . ." [Citations.]' [Citations.]" (*People v. Bratis* (1977) 73 Cal.App.3d 751, 757–758 [141 Cal.Rptr. 45].) Otherwise stated: " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

With these principles in mind, we cannot adopt respondents' position on appeal. The purpose of the MRTA was to free up property; unlike title 4.5 of the Code of Civil Procedure, it was not enacted to address and balance the needs of prospective purchasers, property owners, and claimants. Under these circumstances, to the extent Civil Code section 880.260 conflicts with the statutes defining "action" and setting forth the requirements for the recording of a lis pendens, we must defer to the statutes within the Code of Civil Procedure.

### d. *Conclusion*

For these reasons, we conclude that the word "action" within title 4.5 of the Code of Civil Procedure, which governs the recording of lis pendens, does not include arbitration proceedings. If our conclusion is problematic, "it is up to the Legislature—and not this court—to change the law" (*Kirkeby v. Superior Court, supra*, 33 Cal.4th at p. 651) and add arbitration as an appropriate action that supports the recording of a lis pendens.

### 2. *Litigation privilege*

It follows that we are not persuaded by respondents' reliance upon the litigation privilege. (Civ. Code, § 47, subd. (b)(4).) Civil Code section 47, subdivision (b)(4) only provides protection if the lis pendens "identifies an action previously filed with a court of competent jurisdiction which affects the title or right of possession of real property, as authorized or required by law." (Civ. Code, § 47, subd. (b)(4); see also *Salma v. Capon, supra,* 161 Cal.App.4th at p. 1285 [the filing of the notice of lis pendens in superior court constituted protected activity within the litigation privilege].) Here, respondents' lis pendens did not "identif[y] an action previously filed with a court of competent jurisdiction." (Civ. Code, § 47, subd. (b)(4).) As such, the litigation privilege does not apply. And, while "statements made in the course of a private contractual arbitration proceeding are protected by the litigation privilege . . ." (*Moore v. Conliffe, supra,* 7 Cal.4th at p. 658), respondents' two lis pendens were not simply statements made in the arbitration proceedings.

### 3. *Damages*

"Pecuniary loss" is an essential element of a slander of title cause of action. (See, e.g., 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 646, p. 953.) According to respondents, no damages resulted from the recordation of the lis pendens because the condominium units are not ready to be sold and have not been offered for sale; neither the final public report (as required by Bus. & Prof. Code, § 11018.12) or certificate of occupancy (L.A. Mun. Code, § 91.109.1) has been issued.

While that may be true, appellant offered evidence of its damages in opposition to respondents' anti-SLAPP motion. Specifically, appellant presented a declaration from Shy, appellant's manager. Shy stated that "as a result of the two lis pendens recorded by [respondents], [appellant] could not sell any residential condominium units, until the lis pendens are removed." He continued: "Even without a certificate of occupancy, [appellant] could have (and would have) marketed the residential units and opened escrow, subject to getting the certificate of occupancy and the [final public report] issuing. Indeed, I have been involved in other entities that have done just that. In this case, however, the two lis pendens made even that impossible." Moreover, "[e]ven if the two lis pendens were removed tomorrow, [appellant] would still have very substantial damages. The delay has already cost [appellant] millions of dollars. The real estate market, and in particular the market for loft style condominiums has fallen dramatically since the two lis pendens were recorded. Of course, even if the market had not fallen, [appellant] would still have suffered damage as a result of the delay in

receiving the sales proceeds." "[Appellant] cannot sell the Property, nor any part of it, until the two lis pendens are removed." This testimony provides adequate evidence of damage. (See, e.g., *Appel v. Burman* (1984) 159 Cal.App.3d 1209, 1215 [206 Cal.Rptr. 259].)

## DISPOSITION

The order granting respondents' anti-SLAPP motion is reversed. The cause is remanded to the trial court with directions to enter a new and different order denying the motion. Appellant is entitled to costs on appeal.

Doi Todd, Acting P. J., and Chavez, J., concurred.

On May 18, 2009, the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied August 12, 2009, S173822. Moreno, J., and Corrigan, J., did not participate therein.