Filed 1/10/23  Roman James Design Build v. Monarch CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROMAN JAMES DESIGN BUILD, INC., | |
| Plaintiff and Appellant, | G060712 |
| v. | (Super. Ct. No. 30-2021-01188990) |
| DAVID MONARCH et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Brown, Neri, Smith & Khan and Geoffrey A. Neri for Plaintiff and Appellant.

Clausen Miller, Joseph J. Ferrini and Ian R. Feldman for Defendants and Respondents.

Plaintiff Roman James Design Build, Inc. (the Company) is a real estate development firm specializing in the design and construction of luxury private residences in Southern California. In 2018, the Company entered into agreements with third parties for four development projects. Later that year, the Company's principal, Roman James (James), filed a petition for the dissolution of his marriage. In November 2019, James's wife's attorney David Monarch and Monarch's law firm Castle & Monarch (the Monarch parties) recorded a lis pendens on the four properties involved in the projects and so notified lenders with whom the Company was negotiating refinancing. The following month, the trial court granted the Company's motion to expunge the lis pendens.

The Company sued the Monarch parties for intentional and negligent interference with prospective economic advantage and intentional interference with contract. The Monarch parties filed a motion to strike the operative complaint pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP motion).[1] The trial court granted the anti-SLAPP motion.

We affirm. It is well established the act of recording a lis pendens, upon which the Company's lawsuit is based, is protected conduct under section 425.16, subdivision (e). As the Company failed to meet its burden of establishing a probability of prevailing on its claims, the trial court did not err by granting the anti-SLAPP motion.

FACTS AND PROCEDURAL BACKGROUND

I.

THE FIRST AMENDED COMPLAINT

The Company, along with then coplaintiff James, filed a first amended complaint against the Monarch parties containing causes of action for intentional

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.' [Citation.]" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 413, fn. 2.) All further statutory references are to the Code of Civil Procedure unless otherwise specified.

interference with prospective economic advantage, negligent interference with prospective economic advantage, and intentional interference with contractual relations. The first amended complaint describes the nature of the action as follows: "The James Parties are luxury real estate developers. Attorney Monarch represented James' ex-wife Nicole James in the James' divorce proceedings. [¶] . . . At all times relevant for purposes of this Complaint, Attorney Monarch knew that the James Parties had several very lucrative real estate development projects in place that would earn the James Parties millions of dollars in builder's fees, as the projects progressed, and tens of millions of dollars in back-end profit upon completion of the projects. [¶] . . . Attorney Monarch and his law firm Castle & Monarch recorded defective and legally frivolous lis pendens on all of the properties that were the subjects of the James' Properties real estate development projects and subsequently notified certain lenders and counterparties to the James Parties in connection with the projects of the frivolous lis pendens. [¶] . . . When James' divorce attorney sent Attorney Monarch correspondence demanding that he withdraw the lis pendens, Monarch responded with an extortionate demand that James pay money in the form of temporary support as well as attorneys' fees to Ms. James as a purported 'compromise'. [¶] James' divorce attorney subsequently moved to expunge the lis pendens, which motion was granted on the basis that there was and is no real property claim to support the lis pendens. However, by that time the damage was done. All of the James Parties' real estate development projects fell through, as key lenders removed themselves from the projects due to the uncertainty and exposure caused by the lis pendens and Monarch's interference."

In support of the asserted causes of action, the first amended complaint alleged, inter alia, the Monarch parties (1) knew (or should have known) of the Company's economic relationships and knew of its written contracts with several lenders and counterparties in four projects which included operating and loan agreements; (2) "engaged in wrongful conduct by recording frivolous lis pendens on the properties

3

underlying the Projects and sending notice of those lis pendens to the Projects' lenders"; (3) by such conduct, prevented performance of the Company's written contracts or "made performance more expensive or difficult"; and (4) intended to disrupt the Company's economic relationships or knew that disruption of those economic relationships and contracts "w[as] certain or substantially certain to occur." The first amended complaint alleged the Monarch parties' conduct was a substantial factor in causing the Company to suffer damages in excess of $30 million and sought an award of compensatory and punitive damages.

A couple of months after the first amended complaint was filed, James filed a request that he be dismissed from the action without prejudice. James's dismissal from the action was thereafter entered by the clerk as requested, leaving the Company as the sole plaintiff in the matter.

II.

THE ANTI-SLAPP MOTION AND THE OPPOSITION

The Monarch parties filed an anti-SLAPP motion seeking to strike the first amended complaint in its entirety on the ground each cause of action within it was based on protected conduct in the forms of recording a lis pendens and related communications.

The Company filed an opposition to the anti-SLAPP motion, arguing: "Because [the Monarch parties]' conduct in recording the lis pendens was not privileged, that conduct is not entitled to the protection of California's anti-SLAPP statute. As [the Monarch parties] cannot meet their burden at step 1 of the anti-SLAPP analysis, the burden does not shift to [the Company] to demonstrate at step 2 the probability of prevailing on its claims. However, in any event, [the Company] can easily satisfy the applicable standard, pursuant to which it need only show the claims have 'even minimal merit'. [Citation.] Contrary to the Motion's arguments otherwise, [the Company] has competent evidence to support a prima facie case for each of its claims, including interference by [the Monarch parties] and resulting damage."

4

The evidence submitted by the Company consisted of a declaration by James in which he described the Company's pending development projects at the time the Monarch parties recorded the lis pendens, and the consequences of that action. As discussed in greater detail *post*, the Monarch parties filed evidentiary objections to James's declaration, several of which objections were sustained by the trial court.

## III.

### THE TRIAL COURT GRANTS THE ANTI-SLAPP MOTION AND AWARDS ATTORNEY FEES TO THE MONARCH PARTIES

The trial court granted the anti-SLAPP motion. In its order, the court concluded the Monarch parties met their burden of showing the Company's first amended complaint arose from protected activity under section 425.16, subdivision (e) because all of its claims were based on the Monarch parties' conduct of recording the lis pendens which, the court noted, is "unquestionably protected activity." The trial court further concluded the Company failed to meet its burden of showing a probability of prevailing on its claims because it failed to submit admissible evidence demonstrating actual disruption of business relationships and/or resulting damages.

The trial court ordered the first amended complaint stricken. The trial court also awarded the Monarch parties $10,740.40 in reasonable attorney fees and costs under section 425.16, subdivision (c)(1).[2] The Company appealed.

---

[2] The Company does not mention the court's award of attorney fees and costs in its appellate briefs. Because we affirm the trial court's order granting the anti-SLAPP motion, we do not further discuss that award in this opinion.

DISCUSSION

I.

SECTION 425.16 AND THE GOVERNING STANDARD OF REVIEW

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.) "We have described this second step as a 'summary-judgment-like procedure.' [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.' [Citation.]" (*Baral, supra*, 1 Cal.5th at pp. 384-385, fn. omitted.)

6

"We review an order granting or denying an anti-SLAPP motion under the de novo standard and, in so doing, conduct the same two-step process to determine whether as a matter of law the defendant met its burden of showing the challenged claim arose out of protected activity and, if so, whether the plaintiff met its burden of showing probability of success. [Citation.]" (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 42 (*Newport Harbor*).)

II.

THE COMPANY'S CLAIMS ARISE OUT OF PROTECTED ACTIVITY

A claim is only subject to an anti-SLAPP motion if it "aris[es] from" protected activity. (§ 425.16, subd. (b)(1).) Section 425.16, subdivision (e), defines protected activity to include any statement made in a judicial proceeding or in connection with an issue under consideration by a judicial body. (§ 425.16, subd. (e)(1), (2).)

In its order granting the anti-SLAPP motion, the trial court concluded each of the three causes of action in the first amended complaint arose out of the Monarch parties' act of recording the lis pendens in the underlying family law action. The Company does not challenge this determination, stating in its opening brief: "Here, the principal thrust or gravamen of [the Company]'s claims, the 'core injury–producing conduct' is that [the Monarch parties'] recording of a lis pendens interfered with [the Company]'s prospective economic advantage and contractual relations. As attested to by James, it was and is the recording and fact of the lis pendens on each property that led to his inability to obtain refinancing on the subject properties. [Citation.] Indeed, the lenders who contacted James specifically identified the lis pendens as the reason that they could no longer provide financing or refinancing of the properties. [Citation.] Accordingly, it was evidently the lis pendens themselves, not the demand letters, that led

7

to the lenders' decision to withhold financing and, in turn, the disruption of prospective economic advantage and contractual relations complained of by [the Company]."[3]

It is well established the recording of a lis pendens is protected activity under section 425.16, subdivision (e). (See *La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 471 ["Unquestionably, the recording of the lis pendens constituted a written statement made in connection with issues under consideration in a judicial proceeding"]; *Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal.App.4th 1040, 1050 [The filing of a notice of lis pendens "falls squarely within" the definition of an ""act in furtherance of a person's right of petition""].)

In its opening brief, the Company argues that, although in general the recording of lis pendens constitutes protected activity, it is not protected activity here because the lis pendens was not privileged. Civil Code section 47, subdivision (b)(4) provides: "A recorded lis pendens is not a privileged publication unless it identifies an action previously filed with a court of competent jurisdiction which affects the title or right of possession of real property, as authorized or required by law." Here, the Company points out the lis pendens did not identify a previously filed lawsuit affecting the title or right of possession of real property and was later ordered expunged by the trial court for that reason.

But, as recognized by the trial court, "the fact that an act is not privileged does not mean that it is not subject to anti-SLAPP protection." In *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 (*Flatley*), the California Supreme Court explained that Civil Code section 47 and section 425.16 are not identical in scope and the former does not

---

[3] In the trial court and on appeal, the Monarch parties argue the Company's claims also arose out of protected activity in the form of the Monarch parties sending demand letters to James's counsel. Because we affirm the order granting the anti-SLAPP motion, we do not need to separately consider whether the alleged conduct of sending demand letters arose out of protected activity or was merely incidental to the protected activity of recording the lis pendens.

8

"operate as a limitation" on the scope of the latter. The Supreme Court further explained that although the litigation privilege provided in Civil Code section 47 can be relevant to determining the application of the anti-SLAPP statute, "the two statutes are not substantively the same" and do not serve the same purpose. (*Flatley, supra*, 39 Cal.4th at pp. 323-324.)

In *Park 100 Investment Group II, LLC v. Ryan* (2009) 180 Cal.App.4th 795, 806 (*Park 100*), the plaintiff cited *Flatley, supra*, 39 Cal.4th 299 in support of the argument the filing of an invalid lis pendens constitutes an illegal act which cannot constitute protected activity under section 425.16. The appellate court distinguished *Flatley* and rejected the plaintiff's argument. The appellate court explained: "In *Flatley*, the defendant attorney's criminal acts of sending letters and making telephone calls to extort money were deemed not protected by Code of Civil Procedure section 425.16. [Citation.] *Flatley* held that where 'the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action.' [Citation.] *Flatley* emphasized that in the examination of the first prong of the anti-SLAPP analysis, an activity was not protected as a matter of law only when the evidence *conclusively* established the illegality. Otherwise, it was an issue to be addressed when the plaintiff was called upon to provide a prima facie showing of the merits of the case. [Citation.]" (*Park 100, supra*, 180 Cal.App.4th at p. 806.)

The appellate court concluded: "*Flatley* does not assist [the respondent]. [¶] An illegal act is one that is forbidden by law. [Citation.] Even if a lis pendens is not appropriate under the circumstances, it is not an illegal act forbidden by law. (E.g., *Manhattan Loft, LLC v. Mercury Liquors, Inc., supra*, 173 Cal.App.4th 1040-1050 [defendants' conduct in filing lis pendens was protected activity even if the lis pendens was invalid, as it did not refer to a pending lawsuit, but referred to arbitration proceedings; thus, even if a lis pendens was not properly filed, the defendants met their

9

burden of showing that the act of filing the lis pendens was protected activity].)" (*Park 100, supra*, 180 Cal.App.4th at p. 806.)

The Monarch parties' conduct of recording the lis pendens, therefore, constituted protected activity within the meaning of section 425.16, subdivision (e).

III.

THE COMPANY DID NOT CARRY ITS BURDEN OF SHOWING A PROBABILITY OF PREVAILING ON THE MERITS OF ITS CLAIMS

As discussed *ante*, once the Monarch parties met their burden of demonstrating the Company's claims arose from protected conduct, the burden shifted to the Company to demonstrate their claims were "legally sufficient and factually substantiated." (*Baral, supra*, 1 Cal.5th at p. 396.) A plaintiff cannot meet this burden by relying on its own pleading but must present admissible evidence. (*Newport Harbor, supra*, 23 Cal.App.5th at p. 49.)

The elements of intentional interference with prospective economic advantage are "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action. [Citation.]" (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512.)

"The elements of negligent interference with prospective economic advantage are (1) the existence of an economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with reasonable care; (5) actual disruption of the relationship; and (6) economic harm proximately caused by the

10

defendant's negligence. [Citations.]" (*Redfearn v. Trader Joe's Co.* (2018) 20 Cal.App.5th 989, 1005, overruled on another ground in *Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1148.)[4]

"Tortious interference with contractual relations requires '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' [Citations.]" (*Ixchel Pharma, LLC v. Biogen, Inc., supra*, 9 Cal.5th at p. 1141.)

Each of the Company's claims requires proof of "actual" disruption of an economic relationship or contract which resulted in economic harm to the Company. In its order, the trial court concluded the Company failed to carry its burden of showing a probability of prevailing on its claims because it failed to produce admissible evidence of such disruption and consequent damages: "[The Company] contends that it was unable to extend loans on four of its projects due to the lis pendens recorded by [the Monarch parties], which resulted in millions in damages. [The Company], however, failed to submit admissible evidence demonstrating actual disruption of the relationship and/or resulting damages. The only evidence in support of such contention is contained in the declaration by [the Company]'s principal, Roman James. But that evidence was inadmissible as hearsay, lacks personal knowledge, and/or lacks foundation. [Citation.] [The Company] did not cure the asserted defect and did not demonstrate the defects were curable at the hearing on the motion. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* [(2019)] 6 Cal.5th [931,] 949.) Accordingly, [the Company] fails to meet its burden on the second prong."

---

[4] "The difference between intentional interference and negligent interference with prospective economic advantage relates to the defendant's intent." (*Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th 1395, 1404, fn. 10.)

The Company does not challenge any of the trial court's specific rulings on the Monarch parties' evidentiary objections to James's declaration. Instead, in the opening brief, the Company broadly argues that, although the Monarch parties objected to portions of James's declaration as inadmissible lay opinion and lacking foundation, "Mr. James is perfectly competent as a witness and has personal knowledge of his damages."

The trial court sustained the Monarch parties' evidentiary objections to the following portions of James's declaration, on the grounds those portions constituted hearsay,[5] lacked foundation, assumed facts not in evidence and/or declared facts of which James lacked personal knowledge:

- "All was going well until I was told, by Mr. Martin, that as the result of the lis pendens recorded on the Sunset Plaza Property, I was no longer eligible for a loan."

- "In addition, I was sent an email from the President of Pivotal Capital (Mr. Joe Gigliello on November 21, 2019) containing a copy of the lis pendens filed on the Sunset Plaza Property and I was subsequently told that because of this fact, the loan would not be extended again."

- "Due to a similar series of events, as described above, the lender on the Laguna Beach Project, Mr. Andrew Martin, President of Arcus Capital, decided to not approve an extension of the loan that was previously made on the Laguna Beach property. Consequently, I lost this property, leaving me with no interest in the project. RJDB lost income in the form of construction draws on development [of] the property, which ceased, as well as lost profits on an eventual sale of the property."

---

[5] "Hearsay is an out-of-court statement offered for the truth of the matter asserted and is generally inadmissible. [Citation.]" (*People v. Flinner* (2020) 10 Cal.5th 686, 735; see Evid. Code, § 1200 ["'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."].)

- "I also lost all interest in the Robin Drive Project when a lender I had previously repaid tens of millions of dollars on other projects (Skylark Capital) learned about the lis pendens being filed on the Robin Drive project."

- "In addition, my land owner partner on the Robin Drive project told me that he had heard 'talk around town' that I was in trouble and a bad risk due to having Lis Pendens filed on all of my projects."

- "I tried to extend the loan with Skylark Capital, the lender on the Robin [Drive] Project, but due to the lis pendens filed on the property I was turned down."

- "Within a few weeks I was sent a letter from the landowner that removed me from the project and I lost all interest therein."

- "On the project located at 1250 Bel Air Road, I was asked by my landowner equity partner to roll over the construction loan."

- "Consequently, when he received notice of the Lis Pendens having been filed on the property, he felt that he personally and his entire Forty-Eight Million Dollar ($48,000,000.00) Bel Air Road project were at risk."

- "In addition, due to the lis pendens the lender would not roll the loan over and no other lender would loan on a property with such a cloud on title."

In the absence of any specific argument explaining how any of the court's evidentiary rulings constituted an abuse of discretion, we deem the Company's challenge to such rulings forfeited. In any event, the record shows the court did not abuse its discretion because the subject portions of the declaration are inadmissible as hearsay and/or because they lack foundation or James's personal knowledge of the facts asserted.

The Company does not contend that, absent the portions of James's declaration the court deemed inadmissible, it produced evidence showing the Monarch parties' conduct of recording the lis pendens actually interfered with any contract or economic relationship of the Company's so as to cause it to suffer economic harm or damages. Indeed, the portions of James's declaration deemed admissible by the trial

13

court do not address how the recording of the lis pendens caused the Company any harm. As such, the Company failed to carry its burden of showing a probability of success on its claims.

IV.

*SWEETWATER UNION HIGH SCHOOL DIST. V. GILBANE BUILDING CO.* (2019) 6 CAL.5TH 931

Citing *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931 (*Sweetwater*), the Company argues that, even if the trial court's evidentiary rulings were correct, the Company "could certainly cure any evidentiary problem at trial in demonstrating actual disruption of its business and damages by presenting competent witnesses . . . who withdrew financing or refused refinancing after learning of the lis pendens and supplanting any reliance on hearsay with their live testimony." Therefore, the Company's argument continues, the Monarch parties' "objections should not have been sustained or, at the very least, [the Company] should have been permitted to attempt to cure the asserted defects before the trial court granted the anti-SLAPP motion on the basis of evidentiary objections."

The Company's argument is based on a misreading of the California Supreme Court's decision *Sweetwater, supra*, 6 Cal.5th 931. In that case, the Supreme Court considered the "narrow question" of "what kind of evidence a court may consider" in determining whether a plaintiff has demonstrated a probability of success in defending against an anti-SLAPP motion. (*Id.* at p. 937.)

In *Sweetwater, supra*, 6 Cal.5th at page 938, a school district sued to void contracts it had entered into with the defendants on the ground the district's superintendent and others had received meals, vacations, and event tickets from the program director and chief executive officer of one of the defendants before and during the bidding and approval process for those contracts. The defendants filed an anti-SLAPP motion, arguing the school district's complaint "stemmed from constitutionally protected political expression." (*Ibid.*) In opposition, the school district relied "on

14

evidence of the various guilty and no contest pleas" entered by the program director and the chief executive officer of one of the defendants, as well as those entered by the district's superintendent and several of its school board members, following a criminal bribery investigation and indictment. (*Id.* at pp. 938-939.) Each of the guilty plea forms incorporated a written factual narrative, attested to under penalty of perjury. (*Id.* at p. 939.) The school district also relied on excerpts of grand jury testimony, including that of the program director and chief executive officer. (*Ibid.*)

The trial court overruled the defendants' hearsay objections to the school district's evidence and denied the anti-SLAPP motion. (*Sweetwater, supra*, 6 Cal.5th at p. 939.) The Court of Appeal affirmed. (*Ibid.*)

The Supreme Court, in turn, affirmed the appellate court. (*Sweetwater, supra*, 6 Cal.5th at p. 937.) The Supreme Court explained: "The anti-SLAPP statute describes what evidence a court may consider at the second step. It provides that '[i]n making its determination, the court shall consider the pleadings, and supporting and opposing *affidavits* stating the facts upon which the liability or defense is based.' . . . [¶] Although not mentioned in the SLAPP Act, the Code of Civil Procedure also allows a court to consider, in lieu of an affidavit, certain written declarations. To qualify as an alternative to an affidavit, a declaration must be signed and recite that the person making it certifies it to be true under penalty of perjury. The document must reflect the date and place of execution, if signed in California, or recite that it is executed 'under the laws of the State of California.' [Citations.] [¶] The purpose of the statutory references to affidavits and declarations is to enhance reliability. 'As with live testimony, the oath-taking procedures for affidavits help prevent perjury. [Citation.]'" (*Id.* at p. 941.)

The Supreme Court acknowledged the factual narratives of the guilty plea forms and the excerpts of grand jury testimony proffered by the school district constituted hearsay. (*Sweetwater, supra*, 6 Cal.5th at pp. 941-942.) The court explained, however, "statutes allowing consideration of some statements in resolving pretrial motions provide

15

an exception to the hearsay rule for purposes of the motion. [Citation.]" (*Id.* at p. 942.) "'[A]lthough affidavits or declarations are authorized in certain *motion* matters under Code of Civil Procedure section 2009, this statute does not authorize their admission at a contested *trial* leading to judgment.' [Citation.] Although *affidavits and declarations constitute hearsay when offered for the truth of their content, section 425.16, subdivision (b)(2) permits their consideration in ruling on a pretrial anti-SLAPP motion.* In connection with the form of the declaration, then, defendants' hearsay objection fails. These declarations may be considered, not because they satisfy some other hearsay exception, but because they qualify as declarations or their equivalent under section 2015.5, and can be considered under section 425.16." (*Ibid.*, third and fourth italics added.)

The Supreme Court concluded the change of plea forms could be considered declarations under section 2015.5 because they were signed under penalty of perjury with "'an express facial link to California or its perjury laws.'" (*Sweetwater, supra*, 6 Cal.5th at p. 942.) With regard to the excerpts of grand jury testimony, the court observed that, while given under oath, the transcript of such testimony is not a "'written declaration under oath'" but a "written memorialization of an oral examination under oath," and, as such, is "not a declaration under section 2015.5 because it is not 'subscribed by' the testifying witness." (*Ibid.*) The Supreme Court nevertheless approved of the trial court's consideration of such evidence in ruling on an anti-SLAPP motion: "The statutory scheme already permits consideration of affidavit equivalents. [Citation.] . . . [T]he important aspect of such evidence is that it be made under penalty of California's perjury laws. [Citation.] Sworn testimony made before a grand jury obviously is made under penalty of perjury. [Citation.] As . . . the Court of Appeal reasoned, a transcript of this testimony is the equivalent of a testifying witness's declaration under penalty of perjury, assuming the authenticity of the transcript can be established. Defendants here do not contest authenticity." (*Id.* at p. 943.) The court

16

noted "[i]t would not serve the purposes of the SLAPP Act to preclude consideration of testimony made under oath" as the sworn testimony was "at least as reliable as an affidavit or declaration." (*Ibid.*)

In the opening brief, the Company argues the trial court should not have sustained the Monarch parties' evidentiary objections to James's declaration because the Company could have cured any evidentiary problem at trial in demonstrating actual disruption of its business and damages "by presenting competent witnesses (e.g., the various lenders (Mr. Giglietto and the 'other parties') who withdrew financing or refused refinancing after learning of the lis pendens and supplanting any reliance on hearsay with their live testimony." The Supreme Court in *Sweetwater* made it clear, in order to show a probability of prevailing on the merits, the plaintiff must produce declarations or their equivalent by which statements therein reflect they were made by competent witnesses with personal knowledge of the facts they swear to be true.

Here, the Company did not offer any statements by lenders such as Giglietto "that are the equivalent of affidavits and declarations because they were made under oath or penalty of perjury in California." (*Sweetwater, supra*, 6 Cal.5th at p. 945.) (Nor did the Company offer any explanation why it had failed to do so.)

Instead, it merely offered James's declaration summarizing what he believed such witnesses might testify to in a declaration or if called at trial. (See *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1147 ["[T]he proper view of 'admissible evidence' for purposes of the SLAPP statute is evidence which, by its nature, is capable of being admitted at trial . . . . Courts have thus excluded evidence which would be barred at trial by the hearsay rule, or because it is speculative, not based on personal knowledge or consists of impermissible opinion testimony. This type of evidence cannot be used by the plaintiff to establish a probability of success on the merits because it could never be introduced at trial."].) James's declaration, therefore, is insufficient under section 425.16 as interpreted by

17

*Sweetwater*, to establish a probability of prevailing on the claims of the first amended complaint.

Our conclusion is consistent with the appellate court's decision in *Sanchez v. Bezos* (2022) 80 Cal.App.5th 750 (*Sanchez*). In *Sanchez*, the plaintiff sued the defendants for defamation, alleging the defendants had falsely told several reporters the plaintiff had given explicit nude photographs of one of the defendants to a newspaper in an effort to damage that defendant. (*Id.* at p. 758.) In opposing the defendants' anti-SLAPP motion, the plaintiff offered his own declaration asserting numerous reporters had told him about the defendants' accusation against him. (*Ibid.*) The trial court found the summary of the reporters' statements contained in the plaintiff's declaration constituted inadmissible hearsay, and therefore could not be considered for anti-SLAPP purposes. As the plaintiff offered no other evidence the defendants had made defamatory comments about him, the court granted the anti-SLAPP motion and entered judgment in favor of the defendants.

On appeal, the plaintiff argued, inter alia, under *Sweetwater, supra*, 6 Cal.5th 931, "hearsay may be considered for anti-SLAPP purposes if there is a reasonable possibility the hearsay will be cured at trial" and that "any hearsay in his declaration can be cured when the reporters testify under oath in deposition or at trial." (*Sanchez, supra*, 80 Cal.App.5th at p. 758.) The appellate court affirmed the order granting the anti-SLAPP motion, stating in relevant part: "Plaintiff misreads *Sweetwater*. That case reaffirmed that hearsay, absent an applicable exception, may not be considered for anti-SLAPP purposes. The only examples of 'curable' hearsay in that decision were statements made under oath or penalty of perjury. Those statements by analogy fell within the hearsay exception for affidavits and declarations in anti-SLAPP proceedings. The reporters' statements recounted in plaintiff's declaration, in contrast, were not made under oath or penalty of perjury, and the trial court properly declined to consider them." (*Id.* at p. 759.)

18

DISPOSITION

The order is affirmed.  Respondents shall recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


GOETHALS, ACTING P. J.


SANCHEZ, J.