**D.C. Lottery Board Chairman, Ken BREWER, et al., Plaintiffs,**

v.

**D.C. FINANCIAL RESPONSIBILITY AND MANAGEMENT ASSISTANCE AUTHORITY, et al., Defendants.**

**Civil Action No. 96–2273 (JR).**

United States District Court, District of Columbia.

Jan. 17, 1997.

Michael A. Luster, Washington, DC, for Plaintiffs.

Daniel A. Rezneck, General Counsel, District of Columbia Financial Responsibility and Management Assistant Authority, Washington, DC, for Defendant District of Columbia Financial Responsibility and Management Assistance Authority.

Charlotte Brookins–Hudson, General Counsel, Council of the District of Columbia, Washington, DC, William J. Earl, Assistant Deputy Corporation Counsel, Washington, DC, for Defendant Council of the District of Columbia.

### *MEMORANDUM*

ROBERTSON, District Judge.

Plaintiffs were members of the D.C. Lottery & Charitable Games Control Board ("Lottery Board"), appointed by the Mayor. They voted on September 20, 1996 to dis-

charge the Lottery Board's Executive Director, Frederick L. King, Jr. On September 21, the D.C. Financial Responsibility and Management Assistance Authority (commonly, if incorrectly, known as the "Financial Control Board") ordered the Lottery Board to reinstate Mr. King and ordered that all Lottery Board personnel were thereafter to report to the Chief Financial Officer of the District of Columbia rather than to the Lottery Board. All three plaintiffs then resigned—Alice Davis on September 23, and Kenneth Brewer and Barbara Garnett on September 24.[1] They filed this suit, challenging the Control Board's order, on October 1. Their application for a temporary restraining order requiring, *inter alia*, their reinstatement, was heard and denied the next day. Plaintiffs then amended their complaint and moved for a preliminary injunction. Defendants—the Financial Control Board and the D.C. City Council—oppose the motion for preliminary injunction and move to dismiss.[2]

As is more fully explained below: (1) All counts against the D.C. City Council will be dismissed because Council members are immune from plaintiffs' claims for money damages and because this Court has no power to direct the votes of Council members. (2) All counts against the Financial Control Board except plaintiffs' First Amendment claim will be dismissed. The First Amendment claim cannot be adjudicated without further proceedings to determine, among other things, whether plaintiffs have standing to pursue that claim and whether the Control Board exceeded its authority when it issued the September 21 order. (3) The motion for preliminary injunction will be denied because the likelihood that plaintiffs will succeed on the merits of their First Amendment claim is outweighed by strong public interest considerations.

### 1. *D.C. City Council*

◼ Plaintiffs' claims against the City Council apparently arise from the introduction (but not the passage) of two bills (11–901 and 11–902) that would have abolished the Lottery Board as currently constituted and from the holding of a public hearing on those bills. The District of Columbia's local speech and debate statute, D.C.Code § 1–223, protects "[e]verything said, written, or done during legislative sessions, meetings, or investigations of the Council or any committee of the Council, and everything said, written, or done in the process of drafting and publishing legislation and legislative reports." D.C.Code § 1–222(b). That provision immunizes the Council from claims for damages arising from the actions of which plaintiffs complain. *See Gross v. Winter,* 876 F.2d 165, 173–74 (D.C.Cir.1989).

◼ Plaintiffs' prayer for injunctive relief against the Council is also foreclosed. Council members have a constitutionally protected right to cast unimpeded votes on issues of public importance. *See Clarke v. United States,* 886 F.2d 404 (D.C.Cir.1989), *vacated as moot,* 915 F.2d 699 (D.C.Cir.1990) (en banc). Plaintiffs have identified no compelling interest that stands in opposition to that protection.

### 2. *Financial Control Board*

#### a. *Retaliation claim*

[3, 4] Plaintiffs complain in Count I of unlawful retaliation in violation of the D.C. Human Rights Act, D.C.Code § 1–2501 *et seq.,* and seek damages for "lost wages, benefits, and entitlement, damages to . . . careers and reputation, pain and suffering, humiliation and emotional distress." Count I fails to state a claim upon which relief may be granted for at least two reasons. First, only three provisions of D.C. law have been made applicable to the Financial Control Board by Section 108(a)(3) of Public Law 104–8, and the D.C. Human Rights Act is not one of them. Second, even if the D.C. Human Rights Act

---

1. Brewer and Davis "tendered" their resignations. Garnett's letter of resignation recited its immediate effectiveness.

2. For purposes of the motion to dismiss, the record consists of the pleadings and all documents of public record that are integral to the plaintiffs' claim, including the Financial Control Board's September 21, 1996 Order. *Phillips v. Bureau of Prisons,* 591 F.2d 966, 969 (D.C.Cir. 1979). *See also, Wright v. Associated Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994).

were applicable to the Financial Control Board, these plaintiffs, as D.C. government employees,[3] have no private right of action against the Control Board. *See Holland v. Board of Trustees of U.D.C.*, 794 F.Supp. 420, 422 (D.D.C.1992); *Rasul v. District of Columbia*, 680 F.Supp. 436, 439 (D.D.C. 1988); *Dougherty v. Barry*, 604 F.Supp. 1424, 1442 (D.D.C.1985).[4]

### b. *First Amendment violation*

Plaintiffs next assert that, by ordering Mr. King's reinstatement, the Control Board effectively ordered Lottery Board members to *vote* for Mr. King's reinstatement, and that such an order abridged their First Amendment rights to free expression.

Before addressing the substance of that claim, it is necessary to discuss the Control Board's argument that these plaintiffs lack standing because they all resigned from the Lottery Board before they filed their suit. If indeed their resignations were legally effective, they would lack standing because they could not cast votes against Mr. King's reinstatement. *See Keyishian v. Board of Regents*, 385 U.S. 589, 592, 87 S.Ct. 675, 678, 17 L.Ed.2d 629 (1967); *see also Bois v. Marsh*, 801 F.2d 462, 466 & n. 6 (D.C.Cir.1986). Plaintiffs Brewer and Garnett contend, however, that they withdrew their resignations before Mayor Barry accepted them and before they filed this suit. The Control Board's reply to that contention is a transcript of the Lottery Board's meeting (or non-meeting) of October 3, 1996, after the commencement of this suit, at which plaintiff Brewer announced that the Mayor had accepted the resignations and that the Board meeting would not take place for lack of a quorum. Neither side has briefed the question of what constitutes a "resignation"—or whether, indeed, the issue is governed by common law or by some statute or regulation. More importantly, there are unresolved questions of fact regarding the timing and voluntariness of the

resignations. The standing argument cannot be decided on the present record.

The substance of the First Amendment claim is that the Control Board improperly interfered with plaintiffs' votes as Lottery Board members. That theory proceeds from the decision of the Court of Appeals in *Clarke v. United States*, 886 F.2d 404 (D.C.Cir.1989), *vacated as moot*, 915 F.2d 699 (D.C.Cir.1990) (en banc). In 1987, the District of Columbia Court of Appeals ruled that Georgetown University was prohibited by the D.C. Human Rights Act from denying gay students equal access to University facilities and services. Congress reacted to that ruling by making the federal payment to the District of Columbia conditional upon the City Council's amending the D.C. Human Rights Act so that Georgetown and other private educational institutions affiliated with religious organizations could lawfully deny benefits to homosexuals. The members of the City Council sued Congress, asserting that Congress could not constitutionally compel them to vote a particular way. A panel of the United States Court of Appeals agreed with the plaintiffs, concluding that the votes of City Council members are constitutionally protected because they are "intended to express their positions on issues of public policy, and are understood to do so by the Council members' constituents and other observers." *Id.* at 412.

The Control Board responds to plaintiffs' invocation of the *Clarke* case by attempting to distinguish it: The plaintiffs in *Clarke* were elected officials, whereas Lottery Board members were appointed; the votes involved in the *Clarke* case were legislative votes, while a vote to reinstate an executive director is an administrative or personnel matter. I find the distinctions unpersuasive.

■. The constitutional protection identified in the *Clarke* case has been extended in the First Circuit to the votes of non-elected

---

3. There appears to be no dispute about the assertion, implied by the Control Board's argument, that Lottery Board members are employees of the District of Columbia, at least for purposes of this rule. *See* D.C.Code §§ 2–2501, 1–503.

4. The third argument advanced by the Control Board—that it has statutory exemption from liability for actions taken to carry out the District of Columbia Financial Responsibility and Management Assistance Act of 1995, Pub.L. No. 104–8 § 104 is viable only if the September 21 order was not *ultra vires*. *See* section 2.e., *infra*.

officials, in an opinion stating that "[v]oting by members of municipal boards, commissions, and authorities comes within the heartland of First Amendment doctrine...." *Stella v. Kelley,* 63 F.3d 71, 75 (1st Cir.1995). The *Stella* court dealt with the same question presented by this case: whether the votes of *appointed* officials benefit from First Amendment protections. Its persuasive reasoning was that drawing a distinction between elected officials and appointed officials would create a "wholly artificial dichotomy" that would undermine the constitutional protection. *Id.* at 76. That reasoning applies as well to the Control Board's distinction between legislative and administrative votes.

Nevertheless, the First Amendment claim presented by these plaintiffs cannot be adjudicated on the present record. Factual questions are presented by the Control Board's standing argument, and, even if the plaintiffs or some of them do have standing, there remains for analysis the question of whether the asserted need for immediate and dramatic changes at the Lottery Board advances "a compelling state interest and ... is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educs.' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983).

### c. *Separation of powers claim*

In Count III, plaintiffs also maintain that Congress, by giving the Control Board the authority to order the reinstatement of Mr. King, impermissibly expanded its legislative power in violation of the separation of powers doctrine. They rely particularly upon *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). In that case, the Supreme Court held that Congress trespassed upon the constitutionally established separation of powers by giving the Comptroller General executive direction of compliance with the Gramm–Rudman–Hollings Act. The Supreme Court was concerned in that case that Congress could indirectly influence the execution of the laws by exercising or threatening to exercise its power to remove the Comptroller General from office, thereby infringing on the power of the Executive Branch. *Id.* at 726, 106 S.Ct. at 3187–88.

The separation of powers problem addressed in *Bowsher* is not present here. The Executive Branch has no constitutional role with respect to the District that corresponds or competes with that of Congress. Congress has exclusive authority to legislate in and for the District of Columbia. U.S. Constitution, Art. 1, § 8, cl. 17. When it enacted the Home Rule Act of 1973, Congress created the City Council and authorized it to legislate, but Congress expressly reserved its constitutional authority to alter the institutions of the District of Columbia government at any time and for nearly any reason. D.C.Code § 1–206. When it created the Financial Control Board in 1995, Congress "exercise[d] its constitutional authority as legislature for the District." *Id.* The creation of a Financial Control Board with authority to take over, replace or eliminate the Lottery Board accordingly does not present the "dange[r] of congressional usurpation of Executive Branch functions" that concerned the Supreme Court in *Bowsher.* 478 U.S. at 727, 106 S.Ct. at 3188.

### d. *Section 1983 claim*

Plaintiffs next assert a claim for civil rights violations under 42 U.S.C. § 1983. Section 1983 does not establish an independent federal cause of action but instead operates as a statutory vehicle for complaints based on constitutional violations. Count IV is thus essentially a repackaging of plaintiffs' First Amendment claims in Count II, except that in Count IV plaintiffs seek damages for "lost wages, benefits and entitlement, damages to their careers and reputation, pain and suffering, humiliation and emotional distress." That claim must be dismissed for failure to state a claim upon which relief can be granted for the reasons set forth in section 2.a. of this memorandum, *supra.*

### e. *Statutory authority of Control Board*

The next question considered is whether the Financial Control Board had authority to issue the September 21 order. The statute that created the Control Board did not contain an express grant of authority to issue orders. Instead, it laid out a process by which the Control Board was to *recommend*

changes to the law in specified subject matter areas. The Control Board was empowered to direct the Mayor or the City Council to state whether its recommendations would be adopted. Pub.L. 104–8 § 207(a) and (b). Only the rejection of a Control Board recommendation by the Mayor or the City Council empowered the Control Board, after consultation with Congress, to take "action concerning the recommendation as it deems appropriate." Pub.L. 104–8 § 207(c). That was the law on September 21, 1996, when the Lottery Board issued the order challenged in this case.

Then, on September 30, 1996, Congress amended the Financial Control Board statute and gave the Control Board express authority to

> "issue orders, rules or regulations as it considers appropriate to carry out the purposes of [Public Law 104–8 and its amendments], to the extent that the issuance of such an order, rule, or regulation is within the authority of the Mayor of the head of any department or agency of the District government, and any such order, rule, or regulation shall be legally binding to the same extent as if issued by the Mayor or the head of any such department or agency."

Pub.L. 104–208 § 5203(f).

The record does not establish Control Board compliance with the procedural requirements in effect on the date of the Control Board's order, nor has any party called attention to or briefed the question of whether or not the September 21 order was *ultra vires*. The parties are invited to address the issue in future proceedings.

3. *Motion For Preliminary Injunction*

■ The Control Board's leading argument in opposition to the motion for preliminary injunction is to invoke the startling provision of Public Law 104–8 that

> "[n]o order of any court granting ... injunctive relief against the Authority ... shall take effect during the pendency of the action before such Court, during the time the appeal may be taken, or (if appeal is taken) during the period before the

Court has entered its final order disposing of such action."

It is not necessary to apply that no-injunction provision in this case, however, or to decide whether it could withstand a demonstrated need for injunctive relief to prevent imminent, irreparable constitutional injury, because application of the traditional tools for analyzing motions for preliminary injunction requires that this motion be denied. The required balancing of likelihood of success on the merits, irreparable injury, the equities and the public interest tips the scale decisively in favor of the Control Board.

The only claim of plaintiffs that will not have been dismissed by the order that accompanies this memorandum is the claim of First Amendment injury arising from the Control Board's order that the Lottery Board reinstate Frederick L. King as Executive Director. If the Control Board had acted nine days later, after it unquestionably had the authority to turn over full responsibility for the operations and personnel of the Lottery Board to the Chief Financial Officer of the District of Columbia—the authority, in effect, to assume full control of the Lottery Board without requiring the plaintiffs to cast any votes—the claim of constitutional injury would have been moot. The language in the order purporting to direct members of the Lottery Board how to cast their votes would have been unnecessary surplusage, because the vesting of complete control in the Chief Financial Officer of the District of Columbia would have rendered those votes meaningless.

Against the plaintiffs' rather evanescent likelihood of success on the merits must be balanced the public interest, which in this case is very real. Congress has made plain its assessment that the "fiscal and management problems in the District of Columbia government are pervasive" and that a "comprehensive approach to fiscal, management, and structural problems must be undertaken which exempts no part of the District government...." Pub.L. 104–8 §§ 2(a)(4) and (5). Such a comprehensive approach would not be advanced by a disruptive injunction reinstating three former Lottery Board members, particularly where they may ulti-

mately be shown to lack standing to pursue their claims, and where it is clear that the Control Board now has the power to remove them.

An appropriate order accompanies this memorandum.

### *ORDER*

For the reasons set forth in the accompanying memorandum, it is this 17th day of January 1997

**ORDERED** that the motion of defendant D.C. City Council to dismiss [# 16] is **granted.** It is

**FURTHER ORDERED** that the motion of defendant D.C. Financial Responsibility and Management Assistance Authority to dismiss [# 15] is **granted** except with respect to Count II of the second amended complaint and is **denied** with respect to said Count II. It is

**FURTHER ORDERED** that plaintiffs' motion for a preliminary injunction [# 9] is **denied.**