Filed 1/8/25  Hester v. Lewiston Condominiums Homeowners' Assn. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KIMBERLY K. HESTER,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LEWISTON CONDOMINIUMS HOMEOWNERS' ASSOCIATION,<br><br>Defendant and Appellant. | D083803<br><br><br>(Super. Ct. No.<br>37-2023-00033617-CU-OR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, James A. Mangione, Judge.  Affirmed.

Pettit Kohn Ingrassia Lutz & Dolin, Matthew C. Smith and Aaron D. Burden for Defendant and Appellant.

Law Offices of James M. Hester and James M. Hester for Plaintiff and Respondent.

Defendant and appellant Lewiston Condominiums Homeowners' Association (Association) appeals an order denying its special motion to strike plaintiff and respondent Kimberly K. Hester's complaint under the anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ.

Proc.,[1] § 425.16; *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2 (*Wilson*)).  Hester's verified complaint sought quiet title and other relief against Association with respect to a patio area appurtenant to her unit in Association.  The trial court ruled none of her claims were subject to the anti-SLAPP statute; that Hester "satisfied her burden to provide admissible evidence to show that her claims have minimal merit."  We reach the same result, but on a different ground: that Association did not meet its burden to show its activities underlying or forming the basis for Hester's claims are protected by the anti-SLAPP law.  Hence, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

We summarize the background facts in the light most favorable to Hester, the party opposing the anti-SLAPP motion, considering the pleadings, the affidavits concerning the facts on which the liability or defense is based, and otherwise accepting Hester's submissions as true.  (§ 425.16, subd. (b)(2); *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*); *Murray v. Tran* (2020) 55 Cal.App.5th 10, 16; *Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 876, fn. 2.)

Association is a nonprofit mutual benefit corporation with nine condominium units.  Association's homeowners' rights and duties are governed by conditions, covenants and restrictions (CC&Rs).

In September 2012, Hester purchased unit 8 within Association.  Two patios abut that unit, one on the side that is designated for unit 8's use and one to the rear, which was originally designated Association common area.

When new construction began adjacent to Association's complex, Hester became concerned about privacy and thought about installing a planter that

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

would run the length of the rear patio. At an April 2013 homeowner meeting, she asked the owners present if anyone had used the rear patio other than unit 8's owner and they told her no, based on the rear patio's location and the fact it looked directly into unit 8's bedroom. None of the owners objected when Hester asked if she could build the planter, furnish the patio with her own furniture, and do all of the maintenance going forward. The owners voted unanimously to allow her to do that, and in essence make the patio hers.[2]

Thereafter, Hester installed a planter, ran plumbing, furnished, maintained and otherwise improved the area, paying all the expenses. No other homeowner in Association complained, objected, or contributed to the costs. The patio is not accessible to any other homeowner.

In 2023, Hester decided to move to Maine and put her unit up for sale. She received and accepted an offer the first day and an escrow was opened. However, when Hester conferred with Association's counsel about the patio, she was told the April 2013 vote was not sufficient and that Association would have to conduct another vote, requiring 67 percent (seven of nine) of Association's members to agree to convert the patio from common area to an exclusive use area benefiting unit 8. Counsel did not inform Hester about an exception to the 67 percent requirement in Civil Code section 4600, subdivision (b)(3)(E) for a grant of exclusive use "[t]o transfer the burden of management and maintenance of any common area that is generally

---

[2]      Under settled anti-SLAPP principles, we accept as true Hester's characterization of this meeting. (*Wilson, supra*, 7 Cal.5th at p. 891; *Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 964.) Association argues her version is based on altered meeting minutes, and that the "actual" or "official" meeting minutes do not reflect a vote to grant Hester exclusive use of the patio or amend the CC&Rs to do so. But this raises a factual dispute that we may not resolve for purposes of Association's motion.

inaccessible and not of general use to the membership at large of the association." (Bolding omitted.)

Though Hester did not believe the additional vote was necessary because of the April 2013 vote, Association nevertheless held another vote in July 2023. The members voted 5 to 4 in favor of exclusive use, which was not 67 percent of the owners. Because 67 percent of the owners did not agree to convert the patio to exclusive use, it remained Association common area. After about a month, Hester's unit's sale fell through.

Hester retained counsel, who informed Association of provisions in its CC&Rs that assertedly supported Hester's position. Eventually, her counsel demanded that Association amend the CC&Rs to designate the patio exclusive use area, which would resolve the matter. Hester also agreed to mediate, but Association's counsel did not agree to any of her attorney's four proposed dates.

At the end of July 2023, Hester filed a verified complaint against Association seeking declaratory and injunctive relief, and alleging causes of action for quiet title as well as damages for intentional interference with economic relations. In her quiet title cause of action, Hester alleged that while she had exclusive use of the patio ever since Association's April 2013 vote, Association was now claiming the patio was a common area because its July 2023 vote did not result in a 67 percent vote in her favor. She alleged she "submits that a vote with 67 [percent] approval was not required pursuant to Civil Code section 4600[, subdivision] (b)(3)(E)" but despite making a demand upon Association, it refused to amend the CC&Rs to reflect the patio as an exclusive use area for her and/or the owner of Unit 8. She alleged an actual controversy had arisen "as to the status, title, right to use and ownership" of the patio as well as the rights and duties of the parties

4

with respect to it, which was necessary "especially with respect to any sale of the property." Hester asked for a permanent injunction "mandating [Association] to amend its CC&Rs to reflect that the owner of Unit 8 has the exclusive use of the . . . patio." As for her claim for intentional interference with economic relations, Hester alleged she had accepted an offer to sell her property from a prospective buyer and had opened an escrow, but "[a]s result of the July 7, 2023 vote, where five of nine homeowners voted in favor of granting [Hester] the exclusive right to use the . . . patio, [Association] has taken the position that [Hester] does not have the exclusive right to use the patio, notwithstanding the vote of April 28, 2013." Hester alleged Association "was well aware of the pending sale of [her] property and was well aware that its refusal to amend the CC&Rs would essentially kill the sale" and thus Association's actions were intentional. She alleged that as a result of Association's actions, the sale of her property fell through, causing her damages in an amount to be proven at trial.[3]

Association answered and also specially moved to strike the complaint under section 425.16. It argued all of Hester's claims arose out of the protected activity of voting; that her allegations "describe protected speech activity under the [a]nti-SLAPP [s]tatute, as 'conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest' " under section 425.16, subdivision (e)(4). Association argued it was "well established that 'voting is conduct qualifying for the protections afforded by

_____

[3]     At oral argument before this court, Association's counsel notified us that Hester has since sold her unit, mooting all but her cause of action for intentional interference with economic relations. Hester's counsel submitted that nothing had changed with regard to the anti-SLAPP issues presented in this appeal.

the First Amendment.' " It pointed to this court's observation in *Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399 that the term public interest as applied to a small organization or community included private conduct affecting the community in a manner similar to a government entity, as long as it involved an ongoing controversy, dispute or discussion. (*Id*. at pp. 418-419.) Association argued the evidence showed all of Hester's claims arose from its voting; that she made clear in correspondence that "her lawsuit was in direct retaliation for the [Association] members not voting as she desired with respect to the exclusive use common area, and therefore arises from voting—an activity protected under the First Amendment." Association argued Hester could not meet her burden to demonstrate a probability of success on the merits, as her version of the April 2013 meeting minutes was inconsistent with Association's original minutes and likely forged, and thus she had not been granted exclusive use of the common area patio in April 2013. Association also argued that even if it had granted Hester exclusive use, the statutory exception to the 67 percent vote requirement did not apply because the patio was accessible to owners, and its July 2023 vote did not meet that requirement.

In opposition, Hester argued the matter did not involve matters of public significance or chilled constitutional rights, as it dealt with nine private parties, that is the eight homeowners and Association, and nothing in the public interest. She pointed out that her complaint repeatedly stated that Association's July 2023 vote was unnecessary given its April 2013 action to transfer to her the burden of the patio's management and maintenance. Hester argued the voting at issue did not qualify for First Amendment protection, and Association, a non-profit mutual benefit corporation organized

6

to benefit its members, did not implicate a public purpose. She argued there was no public issues in the dispute in that the issues did not affect a substantial number of people and were not matters of public significance. According to Hester, the court could deny the motion if it found Hester's lawsuit did not chill Association's First Amendment rights. Finally, Hester argued she met her burden to show her claim had minimal merit based on the complaint's allegations.

After considering the parties' arguments and taking the matter under submission, the trial court denied Association's motion. It ruled all of Hester's causes of action were "dependent upon [Hester's] ability to show that she had an exclusive use right in the subject 'common area[.']" It acknowledged the parties disputed the scope of Association's April 28, 2013 decision and the content of the official minutes, but found "no dispute that, at a minimum, [Hester] was permitted by the [Association] to plant and maintain bougainvillea in the subject area at her sole responsibility and expense." It ruled that "while the [July] 2023 vote formalized [Association's] position that [Hester] was not entitled to exclusive possession/use of the subject area, [Hester] has identified several provisions of the CC&Rs evidencing (1) [Association's] authority to grant [her] exclusive use and (2) restrictions/requirements imposed on an owner related to common area beautification and improvement. Finally, [Hester] relies on Civil Code [section] 4600[, subdivision] (b)(3)(E) to argue that [Association's] actions in granting her request to maintain the subject area were legally sufficient to grant her an exclusive use without requiring a vote. [Hester] has submitted evidence, via her declaration, that she has maintained the area at her expense for ten years and that the area has not been accessed and used by other residents during that time. Therefore, she has satisfied her burden to

7

provide admissible evidence to show that her claims have minimal merit.  As such, none of these claims are subject to the anti-SLAPP statute."

Association filed this appeal.

DISCUSSION

I. *Legal Principles and Standard of Review*

" '[T]he anti-SLAPP statute is 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern.  [Citations.]  To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." ' " (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008-1009, quoting *Wilson*, *supra*, 7 Cal.5th at pp. 883-884.)  The statute "does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech.  It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

"A court evaluates an anti-SLAPP motion in two steps.  'Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.  [Citations.]  If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least "minimal merit." ' " (*Wilson*, at p. 884.)

"The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute.  A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of

8

liability or a step leading to some different act for which liability is asserted.' [Citation.] To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute." (*Wilson*, *supra*, 7 Cal.5th at p. 884; see also *Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at p. 1009.)[4]

"If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 384.) This second step is a " 'summary-judgment-like procedure.' " (*Ibid.*) "[T]he plaintiff's second-step burden is a limited one. The plaintiff need not prove her case to the court [citation]; the bar sits lower, at a demonstration of 'minimal merit' [citation]. At this stage, ' "[t]he court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to

---

[4] Section 425.16, subdivision (e) provides that an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

9

sustain a favorable judgment.  It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." ' " (*Wilson, supra*, 7 Cal.5th at p. 891.) But "a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.)  If the plaintiff cannot make the required showing, the court will strike the claim.  (*Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at p. 1009.)

"Whether [the claims] arise from activity protected by this provision is a matter we consider de novo[ ] [citation], evaluating the context and content of the asserted activity." (*Wilson, supra*, 7 Cal.5th at pp. 884-885.)  We decide that question based on our review of the record.  (*Park, supra*, 2 Cal.5th at p. 1067.)  "In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based.  [Citations.]  We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Ibid.*)  We broadly construe the anti-SLAPP statute.  (§ 425.16, subd. (a).)

## II. *Association's Request for Judicial Notice*

Association asks us to take judicial notice of another complaint Hester filed against it in April 2024, in which Hester sought money damages.  Citing Evidence Code sections 452, subdivision (d) and 453, Association states only that the "allegations contained in [that pleading] are judicial admissions by [Hester], some of which are relevant to the arguments presented in [Association's] opening brief."  (Some capitalization omitted.)  In its opening brief, Association asserts that in that complaint, Hester alleges Association

10

was legally responsible for maintaining the patio, an allegation that Association maintains is an implicit judicial admission by her that the patio is common area. Association provides no further argument on the matter.

We are not convinced we may properly judicially notice the allegation as a judicial admission. In the portion of Hester's complaint referenced by Association, she alleges: "Plaintiff has had exclusive use of the patio since 2013 but defendant asserts that it is a common area. Pursuant to the CC&Rs, defendant is responsible for all expenses in maintaining the common area." (Some capitalization omitted.) When a complaint contains allegations *of fact* in support of a claim, the opposing party may rely on those factual statements as judicial admissions. (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746; see also *Perez v. Galt Joint Union Elementary School District* (2023) 96 Cal.App.5th 150, 171.)

But Association does not persuade us Hester's allegation about its responsibility is one of fact, as opposed to argument or a legal conclusion. And, read in context, these allegations are not an admission by Hester that the patio at issue is common area, it is only that Association makes the assertion that it is, and the CC&Rs require Association to maintain common areas. We therefore deny Association's request for judicial notice.

### III. *Section 425.16's First Prong*

Association contends Hester's complaint provides three alternative bases to satisfy the first prong of the anti-SLAPP statute. First, it repeats its argument below that voting is protected activity, and asserts Hester's complaint is "explicitly based on [Association] votes" as it seeks to invalidate the July 2023 vote, or assert harm based upon that vote, notwithstanding her position in opposition to its anti-SLAPP motion that the vote was unnecessary. Association also argues Hester seeks to implement an outcome

11

that it voted on in 2013, and thus it has met its initial burden whether the vote took place in 2013, 2023 or both.

Second, Association contends Hester's complaint attacks its actions taken in response to the votes, and those allegations, given its status as a quasi-governmental entity, qualify for protection as an "other official proceeding authorized by law" under section 425.16, subdivisions (e)(1) and (e)(2). According to Association, this protection extends to any written or oral statement made in connection with a homeowners association meeting. It argues it is being sued "because the [Association] membership communicated a decision not to grant [Hester] exclusive use of the common area patio" and "[t]he [Association] [b]oard communicated its intent to honor the 2023 vote and not amend the CC&Rs, as [Hester] demanded."

Third, Association contends Hester alleges harm stemming from its refusal to amend the CC&Rs, which it characterizes as a "publicly-recorded real estate document." It argues that "[r]ecording official real estate documents with a County Recorder is protected activity under the anti-SLAPP statute," specifying section 425.16, subdivisions (e)(1) and (e)(2). It compares the circumstances to those in *Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal.App.4th 1040, in which the Court of Appeal stated that the "filing of a notice of lis pendens falls squarely within th[e] definition" of protected activity in section 425.16, subdivision (e)(1) or (e)(2). (*Id.* at p. 1050.)

In analyzing this prong, we do not look to the pleaded causes of action, but instead focus on identifying the "allegations of protected activity, and the claims for relief supported by them." (*Baral v. Schnitt, supra*, 1 Cal.5th at p. 396.) " 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that

12

the *defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e).' " (*Park, supra,* 2 Cal.5th at p. 1063.)

A.  *Association's Votes as First Amendment Protected Activity*

We agree that Hester's allegations establish that the activity underlying or forming the basis of her claims of liability or injury stemming from the failure of her property sale is respectively Association's 2013 vote (and its alleged failure to abide by it) or its 2023 vote which fell short of the 67 percent required to grant Hester exclusive use of the patio.  In other words, Association's asserted liability to Hester "arises from" that conduct. (Accord, *Park, supra,* 2 Cal.5th at p. 1062 ["A claim arises from protected activity when that activity underlies or forms the basis for the claim"].)  As we explain, however, Association has not persuaded us that those votes fall within any of the categories of protected conduct identified in section 425.16, subdivision (e).

Notably, Association omits a point it made below in connection with its argument about those votes: that its voting constituted " 'conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest' " under section 425.16, subdivision (e)(4).  As it did below, Association relies on *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 183, which in turn relied on *Stella v. Kelley* (1st Cir. 1995) 63 F.3d 71, 75-76 and *Brewer v. District of Columbia Financial Responsibility and Management Assistance Authority* (D.D.C. 1997) 953 F.Supp. 406.  On appeal, Association does not explain how its members' conduct in voting on the common area patio involves "a public issue" or an "issue of public interest" so as to bring it within that category of protected conduct.

13

Importantly, "courts determining whether conduct is protected under the anti-SLAPP statute look not to First Amendment law, but to the statutory definitions in section 425.16, subdivision (e)." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422.)  Each of the four categories described in that section are intended to define subdivision (b)'s phrase, " ' "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue." ' " (*Ibid*.) "The statutory categories provided in section 425.16, subdivision (e) provide objective guidelines that lend themselves to adjudication on pretrial motion." (*Ibid*.)

Association's broad argument that voting warrants First Amendment protection does not establish that a vote cast on the use of a patio impacting a nine-member homeowners association is activity in connection with a public issue or issue of public interest, the sole theory that Association raised below. (Accord, *Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 729 [voting is not *per se* protected activity], citing *Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500, 1506 ["The mere act of voting . . . is insufficient to demonstrate that conduct challenged in a cause of action arose from protected activity"; addressing the vote of a nonprofit organization board member]; *Dubac v. Itkoff* (2024) 101 Cal.App.5th 540.)  In *Dubac*, involving a dispute between owners living in a six-unit condominium building, the court observed that case law rejects the notion that every issue within a homeowners association is a public issue; "merely relating a controversy in some way to a homeowners association does not make it a contribution to public discussion of a public issue." (*Id*. at p. 552.)  The court concluded in that case "[t]he number of people affected by, involved in, or who care about this intra-building name calling is minute.  The record offers no

14

objective basis for saying anyone outside the building had any 'public' interest in this poisoned relationship between neighbors. A matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest" and the "lawsuit did not concern 'speech in connection with a public issue or an issue of public interest.' " (*Id*. at pp. 554-555.) We hold that Association's voting activity is not conduct falling within the subdivision (e)(4) catchall of section 425.16.

Nor does Association establish its vote falls within the subdivision (e)(1) or (e)(2) categories. (Compare *City of Montebello v. Vasquez*, *supra*, 1 Cal.5th at pp. 422-423 ["councilmembers' votes, as well as statements made in the course of their deliberations at the city council meeting where the votes were taken, qualify as 'any written or oral statement or writing made before a legislative . . . proceeding' " under § 425.16, subdivision (e)(1) and "[a]nything they or [a] City Administrator . . . said or wrote in negotiating [a waste-hauling] contract qualifies as 'any written or oral statement or writing made in connection with an issue under consideration or review by a legislative . . . body. . . .' "].)[5] As we explain below, the private Association meetings in which the votes took place are not official proceedings.

The footnote Association cites from *Schroeder v. Irvine City Council*, *supra*, 97 Cal.App.4th 174 does not change our conclusion. That case involved an anti-SLAPP motion brought by a city, city council and four council members to dismiss an action seeking to declare a voter registration and participation program (Vote 2000) an illegal expenditure of public funds. (*Id*. at pp. 180-182.) In the cited footnote, we addressed an amicus curiae

---

[5] Association does not invoke subdivision (e)(3) of section 425.16, which protects "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."

15

argument—raised for the first time on appeal—that government had no First Amendment protected speech or petition rights and thus the respondents could not meet the anti-SLAPP statute's first prong showing. (*Id*. at p. 184, fn. 3.) Because the parties had conceded the statute's applicability (*ibid*.), our discussion was dicta. (Accord, *Talega Maintenance Corp. v. Standard Pacific Corp.*, *supra*, 225 Cal.App.4th at p. 729 [recognizing *Schroeder*'s statement was dicta].) We said, "Insofar as [plaintiff's] lawsuit targeted the council members, the basis for their liability was premised on their *vote* in favor of adopting the Vote 2000 program, and voting is conduct qualifying for the protections afforded by the First Amendment." (*Schroeder*, at p. 184, fn. 3.)

In support of that statement, we cited *Stella v. Kelley*, *supra*, 63 F.3d 71 and *Brewer v. District of Columbia Financial Responsibility and Management Assistance Authority*, *supra*, 953 F.Supp. 406, which dealt with votes of *public officials*: "Voting *by members of municipal boards, commissions, and authorities* comes within the heartland of First Amendment doctrine, and the status of *public officials' votes* as constitutionally protected speech was established beyond peradventure of doubt at the time the selectmen defenestrated the plaintiffs." (*Stella v. Kelley*, at p. 75, italics added; see also pp. 75-76 [relying on another authority for the proposition that " 'the act of voting on public issues by a member of a public agency or board comes within the freedom of speech guarantee of the [F]irst [A]mendment' "]; *Brewer*, at p. 408 ["Council members have a constitutionally protected right to cast unimpeded votes on issues of public importance"].) To the extent our statement in *Schroeder v. Irvine City Council, supra*, 97 Cal.App.4th 174 may be relied upon, it pertains to votes of public officials such as the city council members involved there. Such circumstances are not present in this vote

16

over a common area dispute among Hester and the other small group of homeowners.

It is true we have recognized that " 'courts have found protected conduct in the context of disputes within a homeowners association,' by utilizing the 'public interest' category in the statute, section 425.16, subdivision (e)(4) . . . ." (*Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.*, *supra*, 19 Cal.App.5th at p. 418.) We said in *Golden Eagle* that "[i]n anti-SLAPP analysis, the term ' "public interest" ' as found in section 425.16, subdivision (e)(4) includes, 'in addition to government matters, " 'private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity.' " [Citations.] "[I]n cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance." ' " (*Golden Eagle, supra*, 19 Cal.App.5th at pp. 418-419.)

The dispute in this case among a very small group of homeowners does not implicate public interest concerns. Even characterizing the common area patio issue as an "ongoing controversy, dispute or discussion," it is not of the type that warrants protection by a statute embodying a public policy of encouraging participation in matter of public significance. The *Dubac* court's observation about homeowners associations and collective governance is apt here: "All 'private' organizations govern themselves in some collective way . . . . Every bridge foursome and chess club has *some* way to decide when and where to meet, whom to include, and what rules to follow. . . . To read

17

'public' so broadly would tend to make most things 'private' into something 'public.' And expanding 'public' to include every bridge group would tend to drain all content from a word of limitation. This method of statutory interpretation is unsound." (*Dubac v. Itkoff*, *supra*, 101 Cal.App.5th at pp. 551-552.)

B. *Association Meetings as Official Proceedings*

Association did not raise in its moving papers below the categories set out in the first two clauses of section 425.16, subdivision (e). As indicated above, section 425.16, subdivisions (e)(1) and (e)(2) reference "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subds. (e)(1), (e)(2).) Association did not argue its meetings constitute official proceedings, or that Hester's claims arose from written or oral statements or writings made in or in connection with such proceedings.

But Hester does not argue on appeal that Association forfeited the contention. We will therefore address it, only to conclude the meetings of the nine-member Association are not official proceedings within the meaning of the anti-SLAPP law. Association relies upon the fact that homeowners associations may function as quasi-governmental entities, similar to a municipal government, citing our recognition of that principle in *Damon v.*

18

*Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468[6] and *Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.*, *supra*, 19 Cal.App.5th 399. It points out the Legislature has mandated homeowners association boards conduct open meetings and allow members to speak publicly. Association argues given its status as a quasi-governmental entity, "an association meeting is considered an 'other official proceeding authorized by law' " and "[a]s such, any written or oral statement made in connection with a homeowners' association meeting is entitled to protection under the anti-SLAPP law." It argues the law applies to Hester's complaint because it was filed in response to the communication of its membership's "decision not to

---

[6]     *Damon v. Ocean Hills Journalism Club*, *supra*, 85 Cal.App.4th 468 involved a defamation action by a former homeowners association's manager. (*Id.* at pp. 471, 473.) The allegedly defamatory statements pertained to whether homeowners should engage in self-government or use a professional management company, and whether the plaintiff was competent to manage the association. The statements were made in televised board meetings open to all interested parties, and they implicated issues of public interest because "they concerned the very manner in which [a] group of more than 3,000 individuals would be governed—an inherently political question of vital importance to each individual and to the community as a whole." (*Damon,* at pp. 475, 479.) This court observed that " '[t]he right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech.' " (*Ibid*.) The issues were thus "of critical importance to a large segment of [the] local population," and given the size of the community, the nature of the challenged statements as involving fundamental choices of the association's future management and leadership, and the Legislature's mandate that homeowners association boards be treated similar to governmental entities, the comments involved public issues within the meaning of section 425.16, subdivision (e)(3) of anti-SLAPP statute. (*Id.* at pp. 479-480.) *Damon* expressly did not decide whether homeowners association meetings are official proceedings, as this court decided the activity fell within section 425.16, subdivision (e)(3) on "public forum" grounds. (*Id.* at p. 474, fn. 3.)

19

grant [Hester] exclusive use of the common area patio" and its board's "intent to honor the 2023 vote and not amend the CC&Rs as [Hester] demanded."

We disagree that Association's meetings are official proceedings authorized by law for purposes of section 425.16, subdivisions (e)(1) or (e)(2). The court in *Talega Maintenance Corp. v. Standard Pacific Corp.*, *supra*, 225 Cal.App.4th 722 rejected this same argument. *Talega* analyzed authorities finding various proceedings to be official, including the seminal *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192 case, involving a hospital peer review board decision, as well as *Fontani v. Wells Fargo Investments, LLC* (2005) 129 Cal.App.4th 719 (disapproved on other grounds by *Kibler*, at p. 203, fn. 5), involving a proceeding before the National Association of Securities Dealers. (*Talega*, at pp. 730-731.) It reviewed authorities holding certain proceedings to not be official. (*Id*. at pp 731-732.)

*Talega* concluded "homeowners association meetings fall outside the scope of official proceedings. Although the word 'official' in [section 425.16] subdivision (e)(1) is not coextensive with 'governmental' [citation], the case law demonstrates that nongovernmental proceedings must have a strong connection to governmental proceedings to qualify as 'official.' Thus, although courts have recognized the similarities between a homeowners association and a local government, even going so far as to describe a homeowners association as a 'quasi-governmental entity, paralleling the powers and duties of a municipal government' [citation], a homeowners association is not performing or assisting in the performance of the *actual* government's duties, as was the case in *Kibler* and *Fontani*. Further, unlike the hospital peer review board decision in *Kibler,* decisions by the board of a homeowners association are not reviewable by administrative mandate. Thus they have not been delegated government functions to the same extent."

20

(*Talega Maintenance Corp. v. Standard Pacific Corp.*, *supra*, 225 Cal.App.4th at p. 732.) That homeowners association meetings are statutorily authorized does not make them official proceedings. (See, e.g., *Donovan v. Dan Murphy Foundation, supra,* 204 Cal.App.4th at p. 1508 [board meetings of a nonprofit charitable organization were not official proceedings even though such meetings were authorized by statute because "the actual procedures are left to the private organizations" and the board's decisions were not reviewable by administrative mandate].)

C. *Claims Based on Association's CC&Rs*

We finally reject Association's claim that Hester's complaint alleges injuries or seeks relief stemming from its action in recording its CC&Rs, and that its "actions in recording the CC&Rs (and refusing to record amended CC&Rs) are protected as official acts . . . ." We disagree with Association's characterization of Hester's complaint as alleging injury or damage from its act of recording its CC&Rs, as well as its reading of section 425.16.

Hester's claims are based on Association's *refusal* to take action to amend its CC&Rs. She alleges the sale of her unit "was contingent on the resolution of [the patio] issue" and thus when Association declined to amend its CC&Rs to grant unit 8 exclusive use of the patio area, her pending sale fell through absent an outcome that satisfied the prospective buyers. The complaint does not reference Association's actions in *recording* its CC&Rs or identify such action as the basis for liability or damages. "Because the issues to be determined in an anti-SLAPP motion are framed by the pleadings, we will not 'insert into a pleading claims for relief based on *allegations of activities that plaintiffs simply have not identified* . . . . It is not our role to engage in what would amount to a redrafting of [a] complaint in order to read that document as alleging conduct that supports a claim *that has not in fact*

21

*been specifically alleged*, and then assess whether the pleading that we have essentially drafted could survive the anti-SLAPP motion directed at it.' " (*Medical Marijuana, Inc. v. ProjectCBD.com*, *supra*, 46 Cal.App.5th at p. 883.)

Even if we were to entertain the notion that Hester's claim is based on Association's recording of CC&Rs, the question is not whether the act of recording CC&Rs is an official act, but whether Association's recording constitutes a communication or writing made in or in connection with proceedings that are legislative, executive, or judicial, or other official proceedings authorized by law. (§ 425.16, subd. (e)(1), (2).) Other than citing *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, *supra*, 173 Cal.App.4th 1040, Association does not analyze that question.

*Manhattan Loft* does not assist Association. At issue there was whether a party to a pending arbitration could record a lis pendens without first filing a superior court action. (*Manhattan Loft, LLC v. Mercury Liquors, Inc.*, *supra*, 173 Cal.App.4th at p. 1045.) The Court of Appeal answered no; it held a trial court improperly granted the anti-SLAPP motion of the respondents who had prevailed in arbitration then were sued by plaintiffs for slander of title stemming from their alleged improper filing of the lis pendens. It reached this conclusion by first finding the plaintiff's slander of title cause of action arose from protected activity; that a lis pendens fell within the acts described in section 425.16, subdivisions (e)(1) and (e)(2). (*Id.* at pp. 1049-1051.) But as another court more recently observed: "[T]he court's statement in *Manhattan Loft* that the 'filing of a notice of lis pendens falls squarely within' the statutory definition of protected activity is true for lis pendens *filed in connection with a pending lawsuit*." (*Zhang v. Jenevein* (2019) 31 Cal.App.5th 585, 595, italics added; see *Park 100 Investment Group*

*II, LLC v. Ryan* (2009) 180 Cal.App.4th 795, 805 . . . ["filing a lis pendens is protected activity under section 425.16 because '[c]ommunications in connection with matters related to a lawsuit come within the scope of the litigation privilege and are acts arising from this protected activity' "]; *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1285 . . . [party's "filing of the notice of lis pendens in superior court and the naming of . . . lenders as defendants in his lawsuit were writings made in a judicial proceeding" and "are squarely covered by section 425.16, subdivision (e)(1)"].)  *But it is not true for acts, like the filing of lis pendens, in connection with proceedings that are not legislative, executive, or judicial, or other official proceedings authorized by law.*  And the cases cited by the court in *Manhattan Loft* on this point involved the recording of lis pendens in connection with lawsuits, not arbitrations." (*Zhang v. Jenevein*, at p. 595, italics added, citing *Manhattan Loft*, at p. 1050, in turn citing *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 736, fn. 6 and *Salma*, at p. 1285.)[7]  Association's comparison to *Manhattan Loft* does not convince us that any act it took in recording or not amending its CC&Rs falls within section 425.16, subdivision (e)(1) or (e)(2) as an act in or in connection with some kind of official proceeding.

In sum, we conclude Association has not demonstrated Hester's claims arise from protected activity.  As a result, they are not subject to being

---

[7]    The *Zhang* court went on to observe that "[t]he plaintiff [in *Manhattan Loft supra*, 173 Cal.App.4th 1040] did not argue, and the court did not hold, that contractual arbitration is a judicial or official proceeding within the meaning of section 425.16.  The plaintiff argued only that the filing of the lis pendens did not arise from protected activity because the lis pendens were not related to the arbitration, an argument the court rejected because the 'arbitration proceedings involved claims that affected title to and rights of possession' of the property at issue in the dispute." (*Zhang v. Jenevein*, *supra*, 31 Cal.App.5th at pp. 594-595.)

stricken under section 425.16, and we need not consider whether Hester established a probability of prevailing on her claims.

DISPOSITION

The order denying Association's section 425.16 special motion to strike is affirmed.  The parties shall bear their own costs on appeal.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.